UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ANDY KENDALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-55-HBG |
| | ) | |
| CARMEN DELONG, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties for all further proceedings, including entry of judgment [Doc. 24].

Now before the Court is Defendant Carmen Delong's Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") [Doc. 8].[1] Defendant filed a Supplement to the Memorandum in Support of the Motion to Dismiss on April 17, 2020 [Doc. 39], and Plaintiff filed a Response in opposition [Doc. 41] on April 20, 2020. The Court held a telephonic hearing on Defendant's Motion to Dismiss on April 29, 2020. Attorneys Dale Montpelier and Joe Della-Rodolfa appeared on behalf of Plaintiff, while Attorneys Dail Cantrell and William Arnold appeared on behalf of Defendant.[2] Accordingly, for the reasons more fully explained below, the Court finds Defendant's

---

[1] Defendant filed her Motion to Dismiss [Doc. 8] on March 2, 2020, before Plaintiff filed his Amended Complaint [Doc. 20]. However, Defendant subsequently filed her Supplement to the Memorandum in Support of the Motion to Dismiss [Doc. 39], and neither party claimed that the Motion to Dismiss was moot.

[2] Attorneys Rodolfa and Cantrell have not yet, however, made an appearance in the present case.

Motion to Dismiss [**Doc. 8**] well-taken, and it will be **GRANTED**. Plaintiff's claims will thus be **DISMISSED WITHOUT PREJUDICE** due to the lack of subject matter jurisdiction.

## I. BACKGROUND

Plaintiff's claims stem from his attempted purchase of a home owned by Defendant located at 114 Glendale Lane, Oak Ridge, Tennessee ("114 Glendale Lane"). Plaintiff had recently re-established a relationship with his son and wished to move from Colorado to Oak Ridge to be near his son, daughter-in-law, and grandchildren. Plaintiff arrived in Oak Ridge on December 5, 2019 and moved into short-term furnished housing while attempting to find a long-term residence. *See* [Doc. 20 at ¶¶ 9–10]. Defendant, the owner of 114 Glendale Lane, who "provide[s] outage and contract support to various utilities" had previously purchased another house at 341 North 10th Street, Grover Beach, California on May 21, 2019. [Doc. 8-2]; *see* [Doc. 14 at 2]; [Doc. 41-1 at 36].

Defendant originally listed 114 Glendale Lane for sale on June 21, 2019. *See* [Doc. 14–3]. After another sale fell through, the listing went back onto the market. [*Id.*]. On December 6, 2019, Plaintiff's agent tendered a proposed "Purchase and Sale Agreement" to Defendant's agent and after three counter-offers, the parties reached an agreement on December 9, 2019. [Doc. 20 at ¶ 11]; *see* [Doc. 20-1]. However, a subsequent repairs amendment [Doc. 20-4] and closing amendment [Doc. 20-5] was executed. The closing date was extended from January 6, 2020 to January 13, 2020 and then again until January 31, 2020. *See* [Doc. 20-5]; [Doc. 33-3]. However, on January 30, 2020, Defendant notified Plaintiff that she was "hereby cancelling the contract on the basis of the delays extending closing twice and from the delayed appraisal," as well as that the "[r]epairs cannot be completed within the time frame to meet the closing document." [Doc. 20-7].

On February 6, 2020, Plaintiff filed his Complaint [Doc. 1], seeking equitable relief, specific performance, and damages for Defendant's alleged breach of the real estate contract. Plaintiff alleges that on February 25, 2020, he was forced to return to Colorado to stay with a friend "until this matter is sorted out," due to the costs of paying for his short-term housing in Oak Ridge. *See* [Doc. 33-1]. Defendant, however, asserts that by March 2, 2020, she was already under contract to purchase another home in the Oak Ridge area [Doc. 8-2], with the purchase and sale agreement for 102 Graham Place, Oak Ridge, Tennessee listing a closing date of March 16, 2020 [Doc. 39-1 at 7]. Further, Defendant submitted an addendum to a real estate contract dated March 20, 2020 for the sale of her house located at 341 North 10th Street, Grover Beach, California. [*Id.* at 3]. Plaintiff then filed an Amended Complaint [Doc. 20] on March 20, 2020, alleging in pertinent part, that he was domiciled in Colorado at that time.

## II. POSITIONS OF THE PARTIES

In his original Complaint [Doc. 1], Plaintiff alleged that he was a "citizen and resident of Anderson County, Tennessee" while Defendant was a "citizen and resident of the state of California." [*Id.* at ¶¶ 3, 4]. Plaintiff pointed towards Defendant's purchase of the house located at 341 North 10th Street, Grover Beach, California, her telephone number with an area code based in California, and a belief that she had a California driver's license.

In her Motion to Dismiss [Doc. 8], Defendant claims that Plaintiff has incorrectly stated that she is domiciled in California, that she holds a California driver's license, and that she is registered to vote in California. Therefore, Defendant moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction, claiming that diversity of citizenship did not exist as required under 28 U.S.C. § 1332(a)(1). Defendant requests that the case be dismissed due to a lack of subject matter jurisdiction, as well as reasonable

attorney's fees and an order declaring the notice of lien lis pendens filed in this matter null and void. Defendant states that she currently maintains a valid Tennessee driver's license and an active Tennessee voter registration card. Further, Defendant's sworn declaration [Doc. 8-2] states that she has been a resident of the state of Tennessee since 1989, her daughter and grandchild reside in Oak Ridge, she has owned 114 Glendale Lane since 1999, and that while she travels as a part of her employment, she has considered Oak Ridge to be her home and residence for the last twenty years. Lastly, Defendant states that she is currently under contract to purchase another home in Oak Ridge, and the plant that she has supported in California is closing.

Plaintiff subsequently filed his Amended Complaint [Doc. 20] on March 22, 2020. In the Amended Complaint, Plaintiff asserts that Defendant is domiciled in California, where she purchased a home, currently resides, and was served. Plaintiff also cites to Defendant's telephone number with a California area code. However, Plaintiff asserts that while he was domiciled in Tennessee when the action was filed, he "subsequently moved back" to Colorado and thus is presently domiciled in Colorado. [*Id.* at ¶ 3]. Plaintiff avers that "Defendant wants the case *sub judice* to proceed in a state court situated in Anderson County, Tennessee, in which judicial district the Chancellor is married to her attorney." [*Id.* at ¶ 46].

In Defendant's Supplement to her Memorandum in Support of the Motion to Dismiss [Doc. 39], Defendant claims that her relevant domicile should be determined at the time that the complaint was filed. Further, Defendant asserts that "[a]lthough she has worked out of state on multiple occasions, she has always maintained a continuous residence in Anderson County, Tennessee" and points to her Tennessee driver's license, voting in Tennessee, attendance of church in Anderson County, and the presence of her primary care physician in Tennessee. [*Id.* at 2]. Lastly, Defendant attaches as exhibits the real estate contract for the sale of her house located at

341 North 10th Street, Grover Beach, California [Doc. 39-1 at 3], as well as the purchase and sale agreement for the house located at 102 Graham Place, Oak Ridge, Tennessee [*Id.* at 4–13].

Plaintiff responds [Doc. 41] that two bases for diversity jurisdiction exist: 1) that Plaintiff is now domiciled in Colorado regardless of Defendant's domicile; and 2) that Defendant is domiciled in California. First, Plaintiff asserts that although he moved to Tennessee and attempted to purchase Defendant's home, he could no longer afford to remain in Tennessee after the alleged breach of contract. Plaintiff cites to his affidavit [Doc. 33-1], as well as the affidavit of his son [Doc. 33-2], filed in support of his Motion for Partial Summary Judgment. Plaintiff's son states that Defendant told him "that he will never return to Tennessee unless suitable housing is found." [*Id.*].

Plaintiff further maintains that Defendant is still domiciled in California. First, Plaintiff claims that Defendant only attached "self-serving statements of her intent" through her declaration [Doc. 8-2] and affidavit [Doc. 39-1]. [Doc. 41 at 9]. Plaintiff asserts that Defendant does not state that she actively lives in Oak Ridge at 114 Glendale Lane, and that her purchase of the home at 102 Graham Place merely demonstrates that she intends to change her domicile back to Tennessee. Moreover, Plaintiff claims that "Defendant bought a house in California which then triggered her to list her Oak Ridge House for sale" and thus "[h]er domicile was then moved to California." [*Id.* at 12]. Plaintiff further asserts that Defendant failed to "take any action to buy a replacement home in Tennessee until February 15, 2020, which was nine (9) months after she bought her California home." [*Id.*].

In reviewing the jurisdictional discovery, Plaintiff states that Defendant did not list the California address as her home despite it being the location where she was physically served. Plaintiff alleges that Defendant did not list that her current employment with "ESC Union" was

5

part-time and that the job does not end until 2021 with the possibility to extend until 20204. [*Id.* at 14]. Plaintiff claims that Defendant's response to Interrogatory No. 7 regarding her travel "shows that Defendant has not come back to Tennessee at all since she bought the California house in May of 2019." [*Id.*]. While Plaintiff reviews several of Defendant's answers to discovery requests, Plaintiff particularly alleges that although Defendant did not provide moving records, she moved her furniture to California upon purchasing the home. [*Id.* at 17]. Plaintiff also claims that Defendant had water, gas, cable, Internet, and telephone services in her name in California, as well as a loan account, a mortgage account, and a bank account. Plaintiff states that Defendant also had a vehicle registered in her name in California.

### III. STANDARD OF REVIEW

As mentioned above, Defendant has moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1). A motion filed pursuant to Rule 12(b)(1) challenges subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A challenge of jurisdiction may be made through a facial attack or a factual attack. *Gentek Bld. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 326 (6th Cir. 1990)). "[W]here there is a factual attack, the Court must weigh the conflicting evidence provided by the plaintiff and the defendant to determinate whether subject matter jurisdiction exists." *U.S. v. Chattanooga-Hamilton County Hosp. Authority*, 958 F. Supp. 2d 846, 854 (E.D. Tenn. 2013) (citing *Gentek*, 491 F.3d at 330). The Court may consider evidence, including but not limited to, "affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* (citing *Gentek*, 491 F.3d at 330). "The party asserting that subject matter jurisdiction exists has the burden of proof." *Id.* (citing *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)).

Subject matter jurisdiction based on diversity must have complete diversity of citizenship between all plaintiffs and all defendants. 28 U.S.C. § 1332(a)(2). "[T]here must be complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.,* 596 F.3d 354, 355 (6th Cir. 2010). Citizenship, for purposes of the diversity statute, "means domicile rather than residence." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel,* 477 F.2d at 1120. Both factors must be met, "either without the other is insufficient." *Persinger v. Extendicare Health Services, Inc.*, 539 F. Supp. 2d 995, 996–97 (S.D. Ohio Feb. 12, 2008) (citing *Kaiser v. Loomis*, 391 F.2d, 1007, 1009 (6th Cir. 1968)).

"When a party's domicile is in doubt, courts must utilize a totality of the circumstances, case-by-case approach, weighing a variety of relevant factors." *Ford Motor Co. v. Collins*, No. 11-15011, 2011 WL 5877216, at *2 (E.D. Mich. Nov. 23, 2011). Factors frequently taken into account include:

> [T]he party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity.

*Id.* (internal quotation marks and citations omitted). "No single one of these factors is dispositive, and the analysis does not focus simply on the number of contacts with the purported domicile, but

7

also their substantive nature." *Id.*; *see, e.g.*, *France v. CSX Transp., Inc.*, No. 2:11-cv-079, 2012 WL 2887160, at *2–3 (E.D. Tenn. Jul. 13, 2012).

## IV. ANALYSIS

At the outset, the Court notes that although "[t]he general rule is that diversity is determined at the time of the filing of a lawsuit," *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006), "an amended complaint supersedes all prior complaints." *Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008). "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). Therefore, the Court will analyze whether diversity exists at the time of filing of Plaintiff's Amended Complaint.

As noted by the parties, a review of subject matter jurisdiction in this case reads as a possible question in a Civil Procedure examination, as two suggested domiciles exist for each party. Here, while Defendant has continually asserted that she is domiciled in Tennessee, she has ties to both California and Tennessee, although her ties to Tennessee have only strengthened between the filing of this lawsuit and Plaintiff's Amended Complaint. However, while Plaintiff maintains that Defendant is domiciled in California, he now claims that diversity jurisdiction exists regardless of Defendant's domicile because as of the filing of the Amended Complaint, he is currently domiciled in Colorado. Therefore, the Court has attempted to set forth a detailed timeline of the events in this case.[3] Ultimately, the Court has considered the parties' positions, and for the reasons more fully explained below, the Court finds Defendant's Motion to Dismiss [**Doc. 8**] well-taken, and it will be **GRANTED**.

---

[3] *See supra* Section I.

### A. Plaintiff's Domicile

The Court will first examine Plaintiff's domicile as of the filing of the Amended Complaint. Defendant contends that Plaintiff is domiciled in Tennessee, as although he returned to Colorado, he did not have the intent to remain in the state, and the purpose of his lawsuit demonstrates that he wishes to reside again in Anderson County. Plaintiff asserts that he had not seen his son in decades, and after previously living in Colorado, does not intend to move back to Tennessee unless he is able to live at 114 Glendale Lane. Plaintiff claims that he was unable to find suitable housing, so his domicile reverted back to Colorado after his move.

Plaintiff originally claimed that he was a "citizen and resident of Anderson County, Tennessee" where he moved on December 5, 2019. *See* [Doc. 1 at ¶ 3]. However, after being unable to purchase 114 Glendale Lane, he then alleges in the Amended Complaint that although "he was domiciled [in Tennessee] when this action was filed," he "subsequently moved back to the State of Colorado, and reverted to being a citizen and resident of, and domiciled in the State of Colorado before the filing of this Amended Complaint." [Doc. 20 at ¶ 4]. Defendant asserts that he returned to Colorado on February 25, 2020. [Doc. 33-1].

"[T]here is a widely accepted presumption favoring the continuation of an established domicile against an allegedly newly acquired one; the party trying to show a change in domicile carries a heavier burden than one attempting to show retention of an existing one." *Ford Motor Co. v. Collins*, No. 11-15011, 2011 WL 5877216, at *1 (E.D. Mich. Nov. 23, 2011). Ultimately, the presumption in favor of an established domicile has been interpreted to state that:

> The rule from which this presumption is derived—that a domicile once established continues unless and until a new one is shown by clear and convincing evidence to have been acquired—represents the conflicts of law solution to the problem of locating the domicile of an individual who clearly has pulled up stakes with the intention of abandoning his present domicile, but either has not arrived physically

> at a new one or has arrived but not yet formulated an intention to remain there for the indefinite future.

13E Charles Alan Wright *et. al.*, Federal Practice & Procedure § 3612 (3d ed. 2011); *see, e.g.*, *Collins*, 2011 WL 5877216 at *1. The presumption must be overcome by "clear and convincing evidence" showing that the domicile has changed. *S. Indus. Mech. Maint. Co., LLC v. Swafford*, No. 13-2523, 2013 WL 5375422, at *2 (W.D. Tenn. Sept. 24, 2013) (citing *Collins,* 2011 WL 5877216 at *3).

Therefore, as Plaintiff argues that his domicile changed from Tennessee to Colorado, "[t]o establish a change in domicile, [Plaintiff] carries the burden to show two things by clear and convincing evidence: (1) he took up residence" in Colorado before March 22, 2020 and (2) he intends to remain there. *See Collins*, 2011 WL 5877216 at *3. Plaintiff's physical residence is not in dispute, as he returned to Colorado on February 25, 2020. However, the Court finds that Plaintiff was domiciled in Tennessee as of the filing of the Amended Complaint, as Plaintiff fails to show by clear and convincing evidence that he possesses the intent to remain in Colorado.

"[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Although Plaintiff had returned to Colorado, he lacked "either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973).

To examine an individual's intent, courts "must examine the entire course of [the person's] conduct in order to draw the necessary inferences as to the relevant intent." *Edick v. Poznanski*, 6 F. Supp. 2d 666, 669 (W.D. Mich. 1998). Here, although Plaintiff had previously resided in Colorado, he sold many of his belongings and moved to Tennessee in order to be close to his son. Plaintiff claims that he was domiciled in Tennessee as of the filing of the Complaint. Although

Plaintiff has moved back to Colorado, he states that he is "now staying with a friend until this matter is sorted out." [Doc. 33-1 at ¶ 6]. Plaintiff admits that he "sold virtually all of my belongs in Colorado" prior to his move [*Id.* at ¶ 3], as well as asserts that he "had no choice but to sue for specific performance; that home was uniquely suited to his needs, he HAS NO HOME, and his belongs were sold" [Doc. 14 at 1].

Ultimately, perhaps the clearest indicator of Plaintiff's intention to make his home in Tennessee is the pending lawsuit seeking specific performance of a real estate contract—in Tennessee. While Plaintiff claims that 114 Glendale Lane is the only house that could suit his needs, Plaintiff's course of conduct demonstrates that he intends to return to Tennessee, and if he succeeds on his claim, to live at 114 Glendale Lane. Therefore, even if Plaintiff asserts that he attempted to abandon Tennessee as his domicile, he has "not yet formulated an intention to remain [in Colorado] for the indefinite future." *See* 13E Charles Alan Wright *et. al.*, Federal Practice & Procedure § 3612 (3d ed. 2011). Plaintiff does not possess the requisite intent to remain indefinitely in Colorado, and his lawsuit demonstrates that he wishes to reside again in Anderson County. Accordingly, the Court finds that Plaintiff was domiciled in Tennessee as of the filing of the Amended Complaint.

### B. Defendant's Domicile

The Court must next examine whether Defendant was domiciled in California or Tennessee as of the filing of the Amended Complaint. Plaintiff asserts that Defendant was domiciled in California, as she had a full-time job in the state, a California telephone number, she moved her belongings to the state, her car was registered in California, and she bought a house in the state. Defendant asserts that when she relocated to California, she kept her driver's license and voter

11

registration in Tennessee, maintained church membership, and recently purchased another home in Oak Ridge.

"Domicile is not lost by protracted absence from home, where the intention to return remains." *Edick*, 6 F. Supp. 2d at 668–69 (citing *Stifel*, 477 F.2d at 1120). While Defendant had several ties to California, including her residence and the purchase of a home, these ties were largely tied to her employment. *See S. Indus. Mech. Maint. Co., LLC v. Swafford*, No. 13-2523, 2013 WL 5375422, at *4 (W.D. Tenn. Sept. 24, 2013) ("Despite some definite ties to Missouri, his primary relationships with the state were employment related, and such relationships alone cannot establish domicile."); *see, e.g.*, *Proact Servs. Corp. v. Vis*, No. 1:16-CV-242, 2016 WL 3397536, at *3 (W.D. Mich. June 21, 2016) ("As of that date, Vis had commenced his new employment in Idaho, had been given a company vehicle to drive in Idaho, had purchased and insured a home in Idaho and set up utility accounts for the home, and had made arrangements to have personal property shipped to Idaho. However, as in *Swafford*, Vis's primary contacts with Idaho were related to his employment."). Therefore, the nature of Defendant's employment is important to the determination of her domicile.

Defendant states that she "provide[s] outage and contract support to various utilities and [is] currently supporting a utility in California that is closing." [Doc. 8-2 at ¶ 2]. Additionally, Defendant claims that although she has "worked for utilities in various states with various durations" for the past thirteen years, she has always considered her home to be in Oak Ridge, Tennessee. [*Id.*]. Defendant's daughter and grandchildren have remained in Oak Ridge, she has owned 114 Glendale Lane since 1999, and recently purchased another "larger home for [her] growing family in the Oak Ridge area." [*Id.* at ¶ 5]. Plaintiff claims that Defendant is domiciled in California because she purchased a house in California, registered her car in the state, and had

12

water, gas, cable, Internet, and telephone services in her name in California, as well as at least one loan account in the state.

However, the Court finds that while Defendant has worked at several temporary positions supporting utility companies nationwide, including most recently in California, she maintained her domicile in Tennessee. Defendant considered Oak Ridge to be her home and maintained her voter registration and driver's license in Tennessee.[4] Defendant owned personal and real property in both California and Tennessee. Defendant also foreseeably maintained brokerage and bank accounts in both states. Defendant claims that her immediate family all live in Oak Ridge, and points to her continued church membership, as well as presence of her primary care physician in Tennessee.

Ultimately, Defendant possesses strong ties to both California and Tennessee. Although Defendant's spouse and children did not reside in the home she owned in Tennessee—facts the Court in *Swafford* found "highly significant," 2013 WL 5375422 at *4—Defendant maintained sufficient ties to Tennessee, such that her "primary connection" with California was "her business relationships." *See Edick*, 6 F. Supp. 2d at 670. Defendant retained the intention to return to Tennessee after the completion of a specific, reasonably foreseeable event—the end of her contract in California. *See Novel v. Zapor*, No. 2:12-CV-737, 2013 WL 1183331, at *6–7 (S.D. Ohio Mar. 21, 2013) ("However, 'a floating intention' to return to one's previous domicile is not enough to prevent a new location from eventually becoming one's domicile.") (quoting *Gilbert v. David*, 235

---

[4] While courts may consider an individual's declared intent regarding their domicile and residence, such declarations may be overcome by contrary evidence. *See District of Columbia v. Murphy*, 314 U.S. 441, 456 (1941); *Campbell v. Oliva*, 295 F. Supp. 616, 618 (E.D. Tenn. 1968) ("While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there.") (internal citations and quotations omitted).

U.S. 561, 570 (1915)); *Ewert v. Holzer Clinic, Inc.*, No. 2:09-CV-0131, 2010 WL 3063226, at *5–6 (S.D. Ohio Aug. 3, 2010) ("Courts have held that an intention to return to a former domicile upon the occurrence of some specific reasonably foreseeable event, such as a graduation or end to a training period is not a 'floating intention.'") (internal citation omitted).

While Defendant purchased a home in California, she had also owned 114 Glendale Lane in Oak Ridge since 1999. Further, Defendant states that the plant that she worked at in California is currently in the process of closing. As of the date of filing of the Amended Complaint, Defendant had entered in contracts to both sell her home in California and purchase another house in Oak Ridge. Despite her ties to California, the Court finds that Defendant did not intend for California to be her permanent residence, and that Defendant was domiciled in Tennessee as of the filing of the Amended Complaint. *See, e.g.*, *S. Indus. Mech. Maint. Co., LLC v. Swafford*, No. 13-2523, 2013 WL 5375422, at *5 (W.D. Tenn. Sept. 24, 2013) ("Defendant was physically present in Missouri, but did not evince the requisite intent to remain there indefinitely.").

## V.  CONCLUSION

Both parties claim that the opposition is attempting to engage in forum shopping or delay regarding the proper venue for this action. However, the Court must consider whether Plaintiff's claims are properly before the Court at this time. Ultimately, as Plaintiff and Defendant were both domiciled in Tennessee as of the filing of the Amended Complaint, diversity of citizenship does not exist as required under 28 U.S.C. § 1332(a)(1). Therefore, this action will be dismissed for the lack of subject matter jurisdiction. However, the Court declines to award attorney's fees or costs as requested in Defendant's motion.

14

Case 3:20-cv-00055-HBG   Document 43   Filed 05/11/20   Page 14 of 15   PageID #: 473

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss [**Doc. 8**], and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.** All other pending motions in this matter are **DENIED as moot**. A judgment consistent with this Memorandum Opinion will be entered.

ORDER ACCORDINGLY:

*Bruce Guyton*
United States Magistrate Judge